1  LEONARDO M. RAPADAS
   United States Attorney
2  TIMOTHY E. MORAN
   Assistant United States Attorney
3  DISTRICT OF THE NORTHERN
       MARIANA ISLANDS
4  Horiguchi Building, Third Floor
   P.O. Box 500377
5  Saipan, MP 96950
   Telephone:  (670) 236-2982
6  Fax:        (670) 236-2985

7  Attorneys for United States of America

8

F I L E D
Clerk
District Court

DEC -- 2 2005

For The Northern Mariana Islands
By_____
        (Deputy Clerk)

9              UNITED STATES DISTRICT COURT
               NORTHERN MARIANA ISLANDS
10

11  UNITED STATES OF AMERICA,      )    Criminal Case No. 03-00002
                                   )
12              Plaintiff,         )
                                   )
13      v.                         )    **GOVERNMENT'S MOTION PURSUANT
                                   )    TO U.S.S.G. § 5K1.1**
14  WANG, YANG,                    )
        a/k/a "Mafia,"             )    Hearing:  Re-Sentencing
15                                 )    Date:
                                   )    Time:
16              Defendant.         )
                                   )
17                                 )
                                   )
18  _____)

19

20      The Government intends to move the Court at the pending sentencing hearing for a

21  downward departure pursuant to United States Sentencing Guidelines § 5K1.1.  Based upon the

22  substantial assistance provided by the defendant through a third party, a modest reduction in the

23  defendant's remaining sentence is warranted.  As discussed below, the Government argues that

24  the applicable advisory Guidelines level, from which the Government requests departure, is 25,

25  as the Court originally found, not 23, which the Court found after remand.

                            Background
26
        Defendant Wang, Yang was arrested on February 20, 2003 on the basis of an indictment
27
    charging him with two counts of distribution of a controlled substance, in violation of Title18,
28
    United States Code, Sections 841(a)(1) and 841(b)(1)(C).  Wang pleaded guilty on the day of his

1  arrest and has been in custody ever since.  He declined an invitation to be debriefed by the

2  DEA/CNMI Task Force on the day of his arrest.

3          On May 27, 2003, the Court conducted its sentencing hearing.  Over the defendant's

4  objection, the Court found a two-level enhancement for possession of a firearm as a specific

5  offense characteristic under U.S.S.G. § 2D1.1(b)(1).[1]  Notably, Wang did not contest the fact that

6  a firearm was recovered along with ice during a search of his apartment; in fact, Wang did not

7  object to any of the *facts* in the presentence report.  (See Sentencing Transcript ["Tr."], a copy of

8  which is attached, at 12.)  The Court accordingly "found each fact contained in the amended

9  report to be true and correct."  (Id. at 17.)  Wang contested the enhancement on the ground that

10 possession of the firearm at the time of the search, instead of on the date of the distribution, was

11 not legally sufficient under the Guidelines.  (See id. at 7.)  The Court determined that the

12 enhancement applied and then sentenced Wang to 57 months' imprisonment, which was the low

13 end of the sentencing range of 57 to 71 months.  (See id. at 10.)

14         As the Court may recall from the trial in United States v. Zhu, Lian Kun, Crim. No. 03-

15 00018, Wang gave a note to DEA/CNMI Task Force Officer Ray Renguul as he was being

16 transported to the mainland to serve his sentence.  The note instructed Wang's girlfriend, Jiang,

17 Li Xia, to cooperate with the Task Force.  Jiang cooperated as directed and assisted the Task

18 Force in the investigation that led to the arrest and prosecution of Zhu, Lian Kun.   Jiang assisted

19 the Government throughout trial preparation and testified at Zhu's trial and the jury returned

20 guilty verdicts on all counts.  The Court sentenced Zhu to 87 months' imprisonment.  In addition,

21 the Government presented Wang as a witness at Zhu's sentencing hearing, although the Court

22 declined to rely on his testimony.

23         The Government previously brought a motion for a reduction in sentence pursuant to Fed.

24 R. Crim. P. 35(b)(2)(B) on the same basis.  That motion was denied for a lack of jurisdiction

25 because Wang's appeal was still pending.  Since then, the Court of Appeals remanded the case

26

27

28        [1]The Court found a Guidelines level of 25: base level of 26 for five grams or more of ice, plus two levels for a firearm, minus three levels for acceptance of responsibility.

1 | for further proceedings consistent with United States v. Ameline, 409 F.3d 1073, 1074 (9th Cir.

2 | 2005) (en banc).  On October 27, 2005, the Court re-sentenced Wang.  However, the Court

3 | concluded that the previous application of a two level enhancement for the presence of a firearm

4 | was an unpreserved Booker error because that "fact was not proved beyond a reasonable doubt to

5 | the Court."  (Order After Remand Vacating Original Sentence of Imprisonment and Imposing

6 | New Sentence of Imprisonment, dated October 27, 2005, at 2.)  The Court found a new advisory

7 | Guidelines level of 23, which provides for a range of 46 to 57 months, and again imposed a

8 | sentence at the low end of the applicable, now advisory, range of 46 months' imprisonment.  The

9 | Court also allowed Wang to request a full sentencing hearing, which he did.  The Government

10 | files this motion for consideration in determining Wang's sentence after remand.[2]

11 | Authority To Consider Motion

12 | While not an oft-used device, "third party" or "surrogate" cooperation has been

13 | recognized as a permissible basis for a downward departure motion.  See United States v. Doe,

14 | 870 F. Supp. 702, 708 (E.D. Va. 1994) (setting out standard for granting motions to reduce

15 | sentence based upon "surrogate assistance"); United States v. Bush, 896 F. Supp. 424, 427 (E.D.

16 | Pa. 1994) (recognizing and applying Doe standard, but declining to grant motion); United States

17 | v. Abercrombie, 59 F. Supp.2d 585, 590 (S.D. W. Va. 1999)(finding that a defendant may

18 | receive benefit of a Rule 35 motion on basis of assistance rendered in part by third parties, but

19 | declining to grant motion); but see United States v. Scott, 2005 WL 741910 (D. Minn.

20 | 2005)(finding no authority for grant of Rule 35(b) motion based upon substantial assistance

21 | rendered by third party).

---

25 | [2]Because the Court of Appeals vacated the sentence for a limited Ameline remand, and
26 | therefore there is no sentence to reduce, the Government has brought this motion pursuant to
   | U.S.S.G. § 5K1.1 instead of pursuant to Rule 35.  These same circumstances would also support
27 | a motion under Rule 35(b).  If the Court determines that a motion under Rule 35 is more
   | appropriate than § 5K1.1, the Government requests that Court treat this motion as if filed under
28 | Rule 35.

-3-

1

## Extent of Reduction

2    In the Government's view, Zhu was a significant violator who had supplied Wang and
3    was markedly more culpable. Zhu's conviction would not have been possible absent Wang's
4    cooperation. Under the circumstances, should the Court grant the motion, the Government
5    believes that a modest reduction in the remaining sentence is warranted.

6    ## Applicable Advisory Guidelines Range

7    In its initial re-sentencing, the Court did not apply the two-level enhancement for the
8    presence of a firearm because of a perceived <u>Booker</u> error. Such a ruling misstates the standard
9    of proof applicable to facts underlying sentencing enhancements. Consistent with the practice
10   pre-<u>Blakely</u>, in 2003, the Court already found the presence of a firearm by a preponderance of the
11   evidence. <u>Ameline</u> re-established that the preponderance standard is again the appropriate
12   burden of proof for facts relevant for sentencing, not the higher reasonable doubt standard. 409
13   F.3d at 1086.

14      <u>Ameline</u> held that:

15          Standing alone, judicial consideration of facts and circumstances beyond those found by a
            jury or admitted by the defendant does not violate the Sixth Amendment right to jury trial.
16          A constitutional infirmity arises *only when extra-verdict findings are made in a*
            *mandatory guidelines system.*
17
18   4098 F.3d at 1077-78 (emphasis added). After <u>Booker</u>, the Guidelines are no longer mandatory

19   so judicial determination of facts for the purpose of applying the Sentencing Guidelines cannot

20   violate the Sixth Amendment or <u>Booker</u>. <u>Ameline</u> further directs that "the district court must

21   continue to apply the appropriate burdens of proof, consistent with [United States v.] Howard,

22   [894 F.2d 1085 (9th Cir. 1990)]." 409 F.3d at 1086. <u>Howard</u> held that the "party bearing the

23   burden of proof will be required to meet a 'preponderance of the evidence' standard." 894 F.2d

24   at 1090. Accordingly, as the appropriate burden of proof is preponderance of the evidence, the

25
26
27
28

-4-

1  Court performed its previous fact finding correctly.[3]  Furthermore, as the Guidelines are now

2  advisory, application of a Guidelines level of 25 on re-sentencing cannot cause a <u>Booker</u> error.

### Conclusion

4  At the re-sentencing hearing of Wang, the Government requests that the Court re-instate

5  its previous finding that the advisory Guidelines level is 25 because the Court's previous fact

6  finding met the applicable preponderance of the evidence standard.  Guidelines level 25 provides

7  for a sentence of 57 to 71 months' imprisonment.  Second, the Government moves, pursuant to

8  U.S.S.G. § 5K1.1, that the Court depart downward from the sentencing range for the reasons

9  stated above.  Under the circumstances, should the Court grant the motion, a modest reduction in

10  Wang's sentence is warranted.

11  Dated: December 2, 2005
        Saipan, CNMI

Respectfully submitted,

LEONARDO M. RAPADAS

United States Attorney for the
Districts of Guam and NMI

By: _____
     TIMOTHY E. MORAN
     Assistant United States Attorney

---

25  [3]Given the Court's uncontested finding of facts, the Court's application of the two-level
26  enhancement for possession of a firearm was correct.  The enhancement applies "if the weapon
    was present, unless it is clearly improbable that the weapon was connected with the offense."
27  U.S.S.G. § 2D1.1(b)(1), comment. (n. 3); see <u>United States v. Pitts</u>, 6 F.3d 1366, 1373 (9th Cir.
    1993) (affirming two-level enhancement where firearm found during search at defendant's home
28  two months after distribution took place).

-5-

2

**GARAPAN, SAIPAN, TUESDAY, MAY 27, 2003 – 8:30 A.M.**

THE COURT: There being nothing further to come before the court regarding this matter, we'll take up the next matter.

Mr. Long, is that your matter also?

MR. LONG: Uh, --

THE COURT: Oh, no, Mr. --

MR. LONG: The sentencing is my matter, Your Honor.  Yes, Your Honor, that's the next matter.

THE COURT: Apparently so.

THE CLERK: If Your Honor, please, this is Criminal Case 03-00002, *United States of America v. Wang Yang, also known as Mafia*, coming up for sentencing.

Will counsel please state your appearance?

MR. SMITH: Patrick Smith for the government.

MR. LONG: Anthony Long for Mr. Wang Yang who's present in court, Your Honor, together with the translator-interpreter Mr. Tony Yen.

THE COURT: Mr. Smith, is the government ready to proceed with the sentencing hearing?

MR. SMITH: Yes, Your Honor.

THE COURT: Mr. Long, is the defense ready?

MR. LONG: Yes, Your Honor.

017

**3**

1    THE COURT: I'd ask the clerk to please administer the oath

2  to the interpreter-translator.

3    THE CLERK: Do you solemnly swear that you will justly,

4  truly, fairly, and impartially act as an interpreter in this case

5  now before this court, so help you God?

6    THE INTERPRETER: I do.

7    THE CLERK: Thank you.

8

9    THE COURT: Please state your full name for the record.

10    THE INTERPRETER: Chen Li Yen, also know as Tony Yen.

11    THE COURT: And how do you spell your last name?

12    THE INTERPRETER: Y-e-n.

13    THE COURT: I, as preliminary matter here, first of all, in

14  the presentence investigative report, paragraph 8 on the very last

15  line, it says "give grams." I believe that should be "five grams."

16  Both counsel agree?

17

18    MR. SMITH: Yes, Your Honor.

19    THE COURT: Last line, paragraph 8.

20    MR. LONG: Yes, Your Honor.

21

22    THE COURT: All right, I've crossed out the "g" and

23  interlineated "f" and initialed that.  The other preliminary matter,

24  I've read the objections of the defendant.  I think they are well

25  taken.  The preliminary ruling would be that, number one, the gun

4

was not part of the offense, and number -- and for the reasons that the plaintiff complained of, that is, that the gun was found months later in his apartment and not connected with the commission of the crime down at Winchills.

The second objection, the court also would agree with, that the marijuana found, even the Probation Officer is most equivocal saying that it might have been the defendant's, found in the defendant's sister's room. Well, it might have and might not have also. At any rate, I don't think it makes any difference. We just recompute the methamphetamine that was found, and it does not change the offense level at all. But do either counsel wish to be heard on that, either of those matters?

MR. SMITH: I would, Your Honor.

THE COURT: Yes.

MR. SMITH: Judge, in terms of relevant conduct under the Sentencing Guidelines 1B1.3, that a narcotic trafficking within the common course of conduct that this defendant engaged in, he was found to have comparable amounts of Ice in his room together with the gun on the day that the search was conducted. It's not just the question of the marijuana. They also found several grams of Ice which demonstrates that the defendant was engaged in the course of Ice dealing.

019

5

THE COURT: Well, let me stop you right there.  Under the

relevant conduct, the court does find that that would be included.

There'll be a total Ice, amount of Ice of 7.8 grams.

MR. SMITH: Right, so if we're including the Ice and

acknowledging under the relevant conduct principles, that the

defendant is criminally responsible for the Ice that he had in his

possession on the day of the search and arrest, and that the Ice is

within the scope of the offense conduct for relevant conduct

purposes.  The fact that he has the gun at the same time in the same

place as the Ice for which the court is now ready to punish him

means that he's in possession of that gun in relation to the

narcotics trafficking offense.

THE COURT: Why is that in relation to?

MR. SMITH: Well, I don't even think it's in relation to.

I think if we look at the Guideline in 2D1.1, what we have to

show --

THE COURT: Let me find that.  All right.

MR. SMITH: I'm on, in 2D1.1, Section (b), specific offense

characteristics, sub (1) --

THE COURT: What page are you on?

MR. SMITH: 116 of the Green Manual, Judge, the latest.

We --

020

6

THE COURT: And D, you said?

MR. SMITH: 2D1.1, subsection (b)(1) under specific offense characteristics.

THE COURT: Yes.

MR. SMITH: "If a dangerous weapon including a firearm was possessed, increase by two levels." We certainly demonstrated possession through the search, and there's not even a factual dispute that the defendant was in possession of the gun. So he's in possession of the gun at the time the court stands ready to punish him for Ice. And then the court is going to enhance his offense level for Ice found. We need merely show by preponderance of the evidence that he possessed the gun, and indeed he possessed the gun. We don't even have to show that it was in furtherance of narcotics trafficking. We don't have the burden of showing as we would on a 924(c) charge, that is during and relation to. Mere possession is the test here, Judge. And if the court's already found that the Ice should be included in the offense level computation, then the court can't, following that logic, not add two levels for possession of the gun.

THE COURT: Okay. Mr. Long?

MR. LONG: Your Honor, I think what we're looking at is whether the firearm or a weapon was possessed at the time of the

7

charged activity.  The charged activity at this time occurred in

December of 2002.  That's what Mr. Yang pled guilty for and pled

guilty to.  Now as far as the relevant conduct, they found a gun, I

believe it was, in March of 2003 that was in his bedroom in his

apartment.  And I will concede that, you know, that would, at least,

amount to constructive possession if nothing else.  However, Your

Honor, we don't believe that that is relevant to the charge of the

offense of distributing methamphetamine because the distribution of

what he was charged with, Your Honor.  And this is what the statute,

2D1.1, deals with, the distribution of methamphetamine, trafficking.

The distribution that he was charged with occurred in December.  And

there's no evidence to show that he possessed the gun at the time of

distribution, Your Honor.  That's where we think the difference

lies.

THE COURT: Well, the counts are distribution and

possession with intent to distribute.

MR. LONG: That's correct, Your Honor, distribution with

intent to distribute.  He possessed, December he distributed it and

he had the Ice with the intent to distribute.  So, Your Honor, our

point is that there's no allegation he possessed a gun in December

of 2002, and the government doesn't even make an argument he

possessed a gun in 2002, and there's no reference to gun, a firearm,

Q22

8

any dangerous weapon being possessed in December of 2002.

THE COURT: Well, what is your answer to Mr. Smith's point that if the court includes, as relevant conduct, the Ice that was found, why would it not include the gun that was found?

MR. LONG: Well, I think they're going to have to show the Ice was more for something more than just for personal consumption, Your Honor. They would have to show that the Ice was actually being part still of some trafficking. Just because the Ice was found inside the, I think it was also, his bedroom, Your Honor, that doesn't then mean that that was possessed with intent to distribute, and there's nothing to show anything different, Your Honor.

THE COURT: Mr. Smith, anything further?

MR. SMITH: No, Judge, I think the issue is fairly framed, that the Ice was in the possession of the defendant in the same quantity of which he pleaded guilty to on these specific counts. If the court's already found that it's within relevant conduct, then this gun is possessed within the meaning of the guideline, and the two levels are appropriate. And it's not a challenge to that to say that he pleaded guilty to two counts earlier when for relevant conduct purposes, we're not limited to the narrow counts to the charging instrument.

MR. LONG: Just, well, Your Honor, unlawful possession is

9

governed by 2D2.1. And so what we have here, Your Honor, there's a

distinction between possession, unlawful possession and possession

with intent to distribute. They are not the same for purposes of

the Sentencing Guideline. So to that extent, Your Honor, what they

haven't shown is that the Ice that was found in the bedroom was

still a part of, was part of trafficking because, Your Honor, I

think they only found 1.3 grams. That, in the scheme, that is a

small amount of Ice. That is not a large sum of Ice, and it's

actually smaller than any sum that he was, he was distributing in

December of 2002. So unless you can show that that Ice was not for

personal consumption but was actually part of some trafficking

scheme, Your Honor, we can't include the gun under 2D1.1.

MR. SMITH: Nothing else, Judge.

THE COURT: Well, the court does feel differently than it

did when it announced its tentative ruling. I believe that the Ice,

there's at least the preponderance of the evidence that shows he

possessed the Ice with intent to distribute inasmuch as he had been

distributing Ice on at least two prior occasions of which he pled

guilty to.

Let me check one other thing. And also the fact that he

did possess a gun, I believe now that the two-point level increase

is appropriate. But I want to check one other thing.

10

Well, according to the sentencing report, paragraph 55, apparently related to the Probation Officer, that he denies the use of any control substances. And accordingly, if he doesn't use controlled substances and had those controlled substances in his possession, it must have been for somebody else and not for himself.

All right, this is not the appropriate time but that is my tentative ruling on this matter. Well, I guess, it is the appropriate time. The court will apply the two-point enhancement for the gun, but will reconvert the controlled substance to eliminate the marijuana because I don't believe that it's shown even by a preponderance of the evidence that it was under the dominion, control, or ownership, or use of the defendant if it was found in the defendant's sister's bedroom.

For the record, the following has taken place in this case:

Mr. Yang Wang was named in a two-count Indictment filed in the United States District Court for the Northern Mariana Islands on February 5, 2003. The Indictment charged in Count 1 that on or about December 12, 2002, and in Count 2, on or about December 30, 2002, Mr. Wang committed the offenses of two counts of distribution and possession with intent to distribute a controlled substance, both in violation of Title 21, United States Code, Sections

025

11

841(a)(1) and 841(b)1(C).

1
2          Mr. Wang entered two guilty pleas to the two charges
3   without a plea agreement, that after consultation with his lawyer on
4   February 20, 2003, after accepting the defendant's guilty plea, the
5   court ordered a presentence investigation and set, and scheduled
6   sentencing for today, May 27, 2003.  Defendant has been detained
7   since February 20, 2003.
8
9          The court accepted your plea, Mr. Wang, and judged you
10  guilty of the offenses.  Following the acceptance of the plea, the
11  court's Probation Officer, Ms. Judy N. Ocampo, was instructed to
12  conduct a presentence investigation and to submit her report to the
13  court, counsel and to you.
14
15          I'm informed by the Probation Officer that she has
16  conducted the presentence investigation and submitted her report to
17  counsel and to you; that counsel has conferred with her and
18  communicated two objections to the report.  Ms. Ocampo filed an
19  addendum to the presentence report.  Those objections have now been
20  subject to argument and ruled on by the court, and the court will
21  later in this proceeding amend the report in the appropriate places
22  on the record.
23
24          My understanding is that you've read the report, Mr.
25  Smith; is that correct?

12

MR. SMITH: Yes, Your Honor.

THE COURT: Do you have any objections to the report?

MR. SMITH: No, Your Honor.

THE COURT: Mr. Long, you've read the report.  Do you have any objections to any of the facts reported?

MR. LONG: Your Honor, with respect to the facts, not at this time.  But we have one other objection that hasn't been resolved to the substantive matter of the report, Your Honor.

THE COURT: We'll take that up in just a moment then.

MR. LONG: Thank you.

THE COURT: Mr. Wang, have you had the report translated to you in your native language?

THE WITNESS: Yes.

THE COURT: Do you think there's any mistakes in the report?

THE DEFENDANT: I spoke to my attorney and the name of my birth place is not correct.

THE COURT: Well, let me ask you this.

THE DEFENDANT: It has been corrected.

THE COURT: Pardon me?

THE INTERPRETER: It has been corrected.

THE COURT: It has been corrected.  Any other mistakes in

027

13

the report?

THE DEFENDANT: No.

THE COURT: Mr. Wang, I'll now explain to you what will transpire at this sentencing hearing.

First, the court will accept and adopt as its finding of facts the uncontroverted facts set forth in the presentence report that's been filed. And those facts, of course, include the fact that you pled guilty on February 20, 2003 to two counts of distribution and possession with intent to distribute a controlled substance in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

Next, if there are no disputed issues of facts set forth in the presentence report, I will make a determination that the presentence report is correct. Do you understand that?

THE DEFENDANT: Yes, I know.

THE COURT: Mr. Wang, if there are no disputed facts to be resolved, I will determine that the guidelines that apply to the facts in this case are set forth in the presentence report. The guidelines frame my discretion in imposing a sentence. They inform me whether I should impose, for example, a sentence of fine, or a sentence of imprisonment and supervised release, or a sentence of probation. The statute also informs me of whether I can depart from

14

the guidelines; that is to say to give a sentence above or below the guidelines.  Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The next step will be that I'll ask the prosecutor on behalf of the government to suggest a sentence that ought to be imposed.  I'll then ask your lawyer what sentence he recommends in this case.  I'll also give you an opportunity to address the court and make any statement bearing on the matter that you may care to make.  And you can make a statement not under oath in your behalf if you care to do so.  Do you understand this procedure, Mr. Wang?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about this procedure, Mr. Wang?

THE DEFENDANT: No.

THE COURT: All right, at this time, then, we'll proceed with the resolution of any disputed issues of fact as reported in the presentence report.  Mr. Long, you said you had --

MR. LONG: Yes, Your Honor.  What I have is that -- yes, Your Honor, I'd like to submit a copy of a letter I submitted to the Probation Officer in this case.  And what it deals with, Your Honor, is a draw calculation.  Basically, the guideline makes a distinction

15

between methamphetamine actual and methamphetamine.  There's a

distinction between those two terms.

THE COURT: Let me interrupt you a second.

MR. LONG: Yes, Your Honor.

THE COURT: Did you get a copy of the addendum to this that

had attached to it the laboratory analysis of the methamphetamine

that was for all three different -- well, the two counts in the

relative conduct?  Did you ever receive that?

MR. LONG: Well, Your Honor, I received the one -- the one

in the center that I got didn't have, what I noticed, anything on

the purity, Your Honor.  We had one -- wait a minute -- that dealt

with the -- excuse me.  I'm sorry, Your Honor.  The marijuana, Your

Honor, I have the 1.3 --

THE COURT: Well, let's take these one at a time.  The

first one that I have -- first of all, did you get the three

laboratory analyses of these?

MR. LONG: Yes, Your Honor, now that I -- okay, Your Honor,

now that, looking at the original copy of it, they were attached,

Your Honor.  That is definitely my mistake, Your Honor, not seeing

the three tests that actually had the strength marked as 100% on

the, comes to 100% of the 3.8 grams.  And I think it says 98% on the

2.9 grams, and the 99%, Your Honor.  And I stand corrected, Your

16

Honor.   They were submitted.

1

2              THE COURT: All right, did you want to withdraw this

3      document or what do you want to do with it?

4              MR. LONG: I'll still leave it for the record, Your Honor,

5      because there's some issues that we differ for just on one of the

6      other objections.  So I think for the record, I'd like to leave it

7
       in.
8

9              THE COURT: All right.  Now are there any other objections

10     to any of the facts reported for the defense?

11             MR. LONG: No, Your Honor, not at this time.

12             THE COURT: Mr. Smith?

13
               MR. SMITH: None from the government, Your Honor.
14

15             THE COURT: Inasmuch as the report has been submitted to

16     counsel and to the defendant and inasmuch as there are no

17     objections, there are now no objections, the court instructs the

18     clerk to file the report and the addendum maintained under seal.   In

19
       the event that there's an appeal in this case, the clerk will make
20
       the report and the addendum available to counsel for appellate
21
       purposes.
22

23             It should be noted for the record that the Probation

24     Officer has submitted a specific recommendation as to sentence to

25     the court with the presentence report, and it will be maintained

17

under seal unless otherwise ordered by the court.

Now I need to amend this on the record, a couple of particulars. On paragraph 28, the last line, there should be a period after hydrochloride, and I am crossing out "and 3.2 net grams of marijuana" and initialling that. Paragraph 29 should be deleted in its entirety. And accordingly, I'm putting a line through each word in that paragraph and initialing that. It goes over to page 8, and I'm crossing that entire remainder of the paragraph. If there's any place else in the report that I haven't discussed that talks to or relates to the marijuana, the report should conform that that should be stricken or deleted.

Let the record show that the court now adopts the presentence report as amended by the court in its entirety due to the fact that no portion of the report is now in dispute. The court determines each fact contained in the amended report to be true and correct. Is there any objection to my adoption of the entire presentence report as amended by the court, Mr. Smith?

MR. SMITH: No, Your Honor.

THE COURT: Mr. Long?

MR. LONG: No, Your Honor.

THE COURT: The court has now announce its findings of fact in this case and now determines the appropriate guideline to apply

18

to the facts as found by the court.

It is the court's belief that the guideline is found at Level 25, Category 1 of the Sentencing Table, appearing in the guidelines.

Does the defendant have any objection to the court's determination that that guideline is applicable here?

MR. LONG: Based on the prior, based on the rulings of the court, no, Your Honor.

THE COURT: Does the government have any objection to the guideline the court intends to apply?

MR. SMITH: No, Your Honor.

THE COURT: At this point, then, I'll first hear from Mr. Smith and then from Mr. Long as to the appropriate sentence.  Mr. Smith?

MR. SMITH: Judge, the government recommends the low end of the range, which, at Level 25, is 57 months.  This was a, I think, very, very unusual occurrence, that the defendant came in, pleaded guilty the day of his arrest following his consultation with Mr. Long and saved the court and the government much work.  And while it doesn't merit a sentence below the low end of the range, a sentence at the low end of the range is appropriate in this case.

THE COURT: Mr. Smith, according to the new Protect Act

19

that became effective April 30th, the government is required to make

a motion for a three-point downward departure if it is beyond two

before the court can grant a three-point acceptance of

responsibility.

MR. SMITH: So it would be the third point from 26 to 25.

We do make that motion, I think, it's 3E1.1.  In any event, the

third point is warranted for acceptance of responsibility.  And

within this scope of reasons is why we think the sentence should be

57 months.

THE COURT: All right, thank you.  That motion is granted.

Mr. Long, what is your recommendation as to sentence of the

defendant?

MR. LONG: Your Honor, given that Mr. Wang Yang had

accepted responsibility and pled, pled immediately without any

incentive from the government, Your Honor, we agree to 57 months at

the low end of the guideline range.  But we also believe that the

court should take that into consideration and give a lower sentence

than 57 months, Your Honor.  Thank you.

THE COURT: By what authority, though, could the court do

that?

MR. LONG: Your Honor, I'm not aware of any authority but

we can at least request that.  I'm not aware of any specific

20

authority that allows the court to take those factors. Right now I can't cite any authority, but, nevertheless, Your Honor, we still, for the record, make the request that that be taken into consideration, Your Honor.

THE COURT: All right, it is my understanding that the court does not have the authority to grant a downward departure without the motion by the government.

Mr. Wang, I've heard recommendations from both Mr. Smith and Mr. Long as to what the appropriate sentence should be in this case. I'll give you an opportunity at this time to make your allocution or to tell me anything that you would think that would be important for me to know before imposing sentence. And if you care to make any statement, you can do so at this time not under oath.

Your Honor, I admit what I did. I will be responsible for what I did. I don't want to cause government any problem. I beg Your Honor because I was young; and may I get a second chance for me? That's it. Thank you.

### SENTENCE

THE COURT: Thank you, Mr. Wang. The court is now ready to impose sentence in this case. I'd ask the defendant to please rise

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant Wang Yang is hereby

21

committed to the custody of Bureau of Prisons to be imprisoned for a period of 57 months.

During his imprisonment, the defendant shall participate a drug education and vocational programs approved by the Bureau of Prisons.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years. The term of supervised release will include the following conditions:

1.    The defendant shall be delivered to a duly authorized immigration official for deportation proceedings pursuant to Title 18, United States Code, Section 3583(d), and with the established procedures provided by the Immigration and Naturalization's Act under Title 8, United States Code, Section 1101.

As a further condition of supervised release, if ordered deported, the defendant shall remain outside the United States and shall not reenter without the permission of the United States Attorney General. If deportation fails to occur and the defendant is released from confinement pending further immigration proceedings, he shall immediately report to the United States Probation Office to begin his term of supervised release.

2.    That the defendant shall obey all federal, state, and local laws.

036

22

3.    That the defendant shall comply with the standard conditions of supervised release as set forth by the United States Probation Office.

4.    That the defendant shall not possess a firearm or other dangerous weapons.

5.    That the defendant shall not use or possess illegal controlled substances.

6.    That the defendant shall refrain from the use of any and all alcoholic beverages.

7.    That the defendant shall submit to one urinalysis test within 15 days of release from custody and to two more urinalyses thereafter.

8.    That the defendant shall be assessed for substance or alcohol abuse. If it is determined that he is in need of treatment, he shall participate in a substance abuse program approved by the United States Probation Office for the treatment of narcotic addiction or drug or alcohol dependency, which will include testing for the detection of substance abuse.

The defendant shall also make a payment for treatment at a rate to be determined by the United States Probation Office.

9.    That the defendant shall obtain and maintain gainful employment; and

23

10.   That the defendant shall perform 400 hours of community service under the supervision of the United States Probation office.

Pursuant to United States Sentencing Guidelines, Section 5E1.2(f), all fines are waived since it has been determined that the defendant does not have the ability to pay any fine.

It is further ordered that the defendant pay the United States a special assessment fee of $200 to be paid immediately after sentencing.

A sentence of 57 months imprisonment with three years supervised release, I believe is an appropriate disposition for this defendant who distributed and possessed controlled substances.

In addition, agents found a loaded firearm in the defendant's bedroom.  The defendant's drug activity and possession of firearm makes him a dangerous person in the community.

I also believe that the sentence is appropriate at the very lowest end of the guideline rage inasmuch as the defendant immediately acknowledged acceptance of responsibility and pleaded guilty.  I also believe that the three-point reduction for the acceptance of responsibility is most appropriate here inasmuch, again, as the defendant immediately acknowledged acceptance of responsibility in this case.

24

I also believe the sentence meets the objectives of punishment and deterrence of this particular defendant.  And it also meets the objective of the Sentencing Guideline Commission of deterrence to other people that might be predisposed to committing similar kinds of crimes.

Having reached the sentence and having imposed it, I ask counsel for both sides whether either attorney has any objection to the form of the sentence imposed.  Does the government have any objection?

MR. SMITH: No, Your Honor.

THE COURT: Any objection from the defense?

MR. LONG: No objection, Your Honor.  Just a clarification if that includes time, time already served from the time he's been in jail.

THE COURT: If the defendant was in the custody of the federal government, indeed, it does.

MR. LONG: Okay, thank you.

THE COURT: The Bureau of Prisons calculates that and makes the determination.  If he was in custody on local charge, it's questionable.  But my understanding is he was in custody --

MR. LONG: For federal charge, Your Honor.

THE COURT: For federal charge the whole time, and I

25

believe the presentence report indicates that he will have served 97 days since his arrest.

MR. LONG: Yes, Your Honor.

THE COURT: Whatever it is, he will get credit for time served.

Mr. Wang, you have 10 days in which to take appeal from the sentence imposed in this case.  In the event that you cannot afford counsel to represent you on appeal, the court will appoint counsel for that purpose.  Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Is there anything further to come before the court regarding this matter from the government?

MR. SMITH: No, Your Honor.

THE COURT: Anything further from the defense?

MR. LONG: Your Honor, if you're going to appoint counsel for Mr. Wang Yang --

THE COURT: I'm sorry?

MR. LONG: We would just like the court to appoint counsel to handle the appeal of Mr. Wang Yang basically with --

THE COURT: Well, there's no appeal pending.

MR. LONG: Okay.  I'm not sure of that procedure but we'll take care of that.

040

26

THE COURT: Yeah, if there's an appeal filed, counsel will be -- do you have any conflicts or anything?

MR. LONG: Excuse me, Your Honor?

THE COURT: Do you have any conflicts?

MR. LONG: I'm taking the position that I don't, Your Honor.

THE COURT: Okay.

MR. LONG: Government, I think, takes a different position.

MR. SMITH: This is the case that overlaps with defendant Ke, in our view. And Your Honor had appointed a standby counsel. I didn't think there was any problem whatsoever with the proceeding with the sentencing today given the nature of the case. But Your Honor had appointed Mr. Matthew Smith as standby counsel. And if there's an appeal, there may be further proceedings in the case, it will be appropriate to continue to have Mr. Smith as standby counsel.

MR. LONG: But then that's not the point, Your Honor. I don't think there is a conflict. So if there's -- you know, I have no problem with handling the appeal for this case.

THE COURT: Well, all right, probably it's the better part of valor if there's going to be an appeal, if there is any question of conflict, probably to appoint somebody else. But that's really

27

not before the court.  If and when an appeal is filed, we'll take

that matter up, I will.

        There being nothing further to come before the court

regarding this matter, I will remand the defendant back to the

custody of the United States Marshal until further order of the

court.


        (Court recessed at 9:15 a.m., Tuesday, May 27, 1003.)


-------------------------------------------------------------------

1

2   COMMONWEALTH OF THE          )

3   NORTHERN MARIANA ISLANDS )      ss.

4   SAIPAN, MP                   )

5   _____)

6

7

8           I, SANAE N. SHMULL, Official Court Reporter for the

9   United States District Court for the Northern Mariana Islands, do

10  hereby certify:

11          That the foregoing sentencing proceedings in Criminal Case

12  No. 03-00002, *United States of America v. Yang Wang, also known as*

13  *Mafia*, consisting 27 pages, was taken down by me stenographically

14  with a back-up tape recording device at the time and place indicated

15  herein.

16          That the foregoing transcript is a true and correct record

17  of the proceeding transcribed by me to the best of my ability.

18          I further certify that I am not interested in the events

19  of the action.

20          IN WITNESS WHEREOF, I have subscribed my name and

21  signature this 16th day of June 2003.

22

23

24                          _____

25                             SANAE N. SHMULL
                            Official Court Reporter

                                                        043